```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


JUDY FALANGA et al.            :
                               :
v.                             :    Civil No. WMN-05-3289
                               :
DAVCO RESTAURANTS, INC. et al. :
```

**MEMORANDUM**

Before the Court are motions to dismiss filed by Defendant Davco Restaurants, Inc. (Davco), Paper No. 15, and by Defendant Wendy's International, Inc. (Wendy's or Wendy's International), Paper No. 14.  The motions are ripe for decision.  Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary and that Davco's motion will be granted in part and denied in part, but Wendy's motion will be granted in its entirety.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On July 18, 2004, Defendant Jorge Velazaquez attempted to kiss Sarah Stark while the two were working together at a Wendy's fast food restaurant in Severna Park, Maryland.  Sarah was fourteen years old at the time and Velazaquez was 47.  The two had been left alone in the restaurant for a brief period of time while the manager, Alice Jackson, went to the bank.  Sarah managed to push Velazaquez away and ran into the women's bathroom where she remained until her mother, who she had called from her cell phone, arrived to take her home.  As a result of this experience, Sarah quit her job at Wendy's and, according to the Complaint, has been unable to pursue other employment because of

the emotional trauma attendant to this incident.

Sarah's parents, individually and as her next friends, filed this action against Velazaquez; Davco, the owner and operator of Wendy's restaurant and the employer of Sarah and Velazaquez; and Wendy's International, Davco's parent corporation.  The twenty-count complaint includes claims against Davco and Wendy's under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as well as a variety of state tort claims.  Davco and Wendy's have now moved to dismiss all the claims against them.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In considering such a motion, the Court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff.  See Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).  "To survive [a] motion to dismiss, Plaintiff must have alleged facts that show [that] they are entitled to relief on their substantive causes of action."  In re Criimi Mae, Inc. Securities Litigation, 94 F. Supp. 2d 652, 656 (D. Md. 2000).

**III. DISCUSSION**

A. Exhaustion of Administrative Remedies

Before bringing suit in the district court, a Title VII plaintiff must exhaust her administrative remedies. To do so in the State of Maryland, a plaintiff must file an administrative charge with the Equal Employment Opportunity Commission (EEOC) within 300 days of the alleged unlawful employment practice. See 42 U.S.C. § 2000e-5(e)(1); Ashton v. Okosun, 266 F. Supp. 2d 399, 403 (D. Md. 2003). The exhaustion of administrative remedies is not a jurisdictional requirement, but is, "in fact 'a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" Edelman v. Lynchburg College, 300 F.3d 400, 404 (4th Cir. 2002) (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)).

Plaintiffs allege in the Complaint that they "filed a timely complaint with the EEOC." Compl. ¶ 9. Davco and Wendy's refute that claim and move to dismiss the Title VII claims against them on the ground that Plaintiffs did not file their charge with the EEOC until August 4, 2005, well beyond the 300 day period that undisputedly began to run on July 18, 2004. See Davco's Ex. 3 (EEOC Form 5, "Charge of Discrimination" dated August 4, 2005).

The entirety of Plaintiffs' response on this issue consists of two sentences:

> On March 4, 2005, Plaintiff was timely and signed her Charge Information Questionnaire which was docketed into the EEOC and the initial inquiry began April 19, 2005 (See, Exhibit A). On September 13, 2005, Plaintiff was issued her "Notice of Suit Rights"

3

>letter, and should not be penalized for the ineffectiveness of the Department to pursue and issue a timely Charge of Discrimination.

Opp. to Davco's Mot. 4.  Plaintiffs' Exhibit A is an April 9, 2005 letter from Plaintiffs' counsel to the EEOC office, stating, "Please be advised that we represent Sarah Stark, a minor, regarding the enclosed complaint.  There will be other information forthcoming to supplement this packet."  At the bottom of this cover letter is a handwritten note, "Initial Inquiry date April 19, 2005 (when the process began per EEOC)."  Although there is no indication on the cover letter what was originally attached to that letter, the exhibit submitted with the motion includes a two-page "Charge Information Questionnaire," a six-page "Harassment (Sexual, Racial, Etc.) Questionnaire," a one-page "Witness Questionnaire," and a two-page "Remedy Information" form.  These various forms appear to have been completed by Sarah's mother, Judy Falanga, and were signed by Ms. Falanga "under penalty of perjury."  None of these documents were dated, however.

Assuming that these questionnaires were sent to the EEOC on April 9, 2005, they would have been filed with the EEOC within 300 days of the alleged unlawful employment practice.  The question then becomes, do those questionnaires adequately satisfy the requirements of a "charge?"

The EEOC has promulgated a regulation that provides, in pertinent part, that "a charge is sufficient when the Commission receives from the person making the charge a written statement

sufficiently precise to identify the parties, and to describe generally the action or practices complained of.  A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein.  Such amendments . . . will relate back to the date the charge was first received."  29 C.F.R. § 1601.12(b).  The Supreme Court, in an opinion reversing a decision of the Fourth Circuit, held that this regulation rests on a valid interpretation of § 2000e-5(b).  Edelman v. Lynchburg College, 535 U.S. 106 (2002), reversing, Edelman v. Lynchburg College, 228 F.3d 503 (4th Cir. 2000).

Applying this regulation, many courts have held that a plaintiff has exhausted administrative remedies where the actual charge was filed outside the time allowed under § 2000e-5(e)(1), but a questionnaire or similar document was filed within that time period.  See, e.g., Edelman v. Lynchburg College, 300 F.3d 400 (4th Cir. 2002) (on remand, holding that unverified letter was a valid charge to which a verified but untimely Form 5 could relate back); Gross v. Missouri Mounting, No. 4:04CV241 HEA, 2005 WL 3560592 (E.D. Mo. Dec. 29, 2005) (holding timely Intake Questionnaire satisfied charge requirement); Nesemeier v. Commonwealth Land Title Ins. Co., Civ. No. 03-1971, 2004 WL 2070825 (D.D.C. Sept. 10, 2004) (holding timely unsigned and unverified questionnaire followed by untimely formal charge could be deemed a valid and timely charge); Howze v. Virginia Polytechnic, 901 F. Supp. 1091, 1095 (W.D. Va. 1995)(holding

5

questionnaire and affidavit sufficient to satisfy charge requirement under Title VII) (citing Waiters v. Robert Bosch Corp., 683 F.2d 89 (4th Cir. 1982)). Other courts, however, have held that, under the specific facts presented to them, questionnaires did not function as a valid charge. See, e.g., Persik v. Manpower Inc., 85 Fed. Appx. 127 (10th Cir. 2003) (holding that plaintiff had failed to exhaust administrative remedies where questionnaire form clearly indicated that filing of the questionnaire did not constitute the filing of a charge and other correspondence from plaintiff indicated that he did not believe that the questionnaire operated as a charge). The determination as to the sufficiency of the documents submitted must be made on a case-by-case basis and often involves questions of fact best resolved on a motion for summary judgment, or at trial. Howze, 901 F. Supp. at 1095.

Here, the questionnaires submitted by Plaintiff would appear to satisfy the requirements of 29 C.F.R. § 1601.12(b). They identify the pertinent parties and then set out the specific conduct about which Plaintiffs are complaining. The questionnaires actually provide more information than that which is often supplied in a formal EEOC charge. Furthermore, the inclusion of the "Remedy Information" form would indicate that Plaintiffs were intending to pursue a claim. See Nesemeier, 2004 WL 2070825 at *3 ("to constitute a charge under 42 U.S.C. § 2000e-5, notice to the EEOC must be of the kind that would convince a reasonable person that the complainant has manifested

6

an intent to activate the Act's machinery").  To the extent that there were technical defects preventing these documents from constituting a charge, they were cured by the later filing of the formal charge.  Accordingly, the Court will deny Davco's motion to dismiss on this ground.[1]

Wendy's International's motion, however, raises an additional issue which leads to a different result.  Wendy's notes that none of the documents filed with the EEOC named Wendy's International as a respondent.  The Charge Information Questionnaire listed the respondent as a "Wendy's owned by Davco, Inc." and identified the respondent's address as the address of the particular restaurant where Sarah was employed.  The charge identified the employer as "WENDY," but again gave the same restaurant address.  The "Notice of Charge of Discrimination" was sent to Davco at Davco's corporate office headquarters, as was the employer's copy of the right-to-sue letter.  Wendy's International was sent neither copies nor notice of any of these documents.  The first that Wendy's International learned of Plaintiffs' allegations was when it was served the complaint in this action.

As a general principle, an action under Title VII may be brought only against the respondent named in the charge.  <u>Causey</u>

---

[1] Because there remains some uncertainty as to exactly what was submitted and when to the EEOC, and what the EEOC did once it received those materials, the Court will deny this aspect of the motion without prejudice.  Should discovery reveal other information pertinent to this issue, Davco can re-raise the issue in a motion for summary judgment.

v. Balog, 162 F.3d 795 (4th Cir. 1998).  The Fourth Circuit has stressed that Title VII's naming requirement serves two purposes: "First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law."  Alvarado v. Bd. of Trustees, 848 F.2d 457, 458-59 (4th Cir. 1988) (citations omitted).  Where a party was not made aware that claims under Title VII had been filed with the EEOC and thus had no opportunity to participate in the investigatory or conciliation process, courts have barred a subsequent lawsuit.  See Christaldi-Smith v. JDJ, Inc., 367 F. Supp. 2d 756, 764 (E.D. Pa. 2005) (holding that the failure of a franchisee employee to name the franchisor when filing formal complaint of employment discrimination with the EEOC and the absence of any notice to the franchisor of the claim precluded inclusion of the franchisor as party to the discrimination action brought by employee against franchisee).

Plaintiffs argue that their Title VII claims against Wendy's remain viable under the "identity-of-interest" exception to Title VII's naming requirement.  See McAdoo v. Toll, 591 F. Supp. 1399 (D. Md. 1984).  As Wendy's observes, however, courts that have recognized this exception have limited its application to plaintiffs who were unrepresented by counsel at the time that they filed their administrative complaint.  See Christaldi-Smith, 367 F. Supp. 2d at 763 ("This exception only applies to plaintiffs who were not represented by counsel at the time that

8

the EEOC complaint was filed."); McAdoo, 591 F. Supp. At 1403 ("Congress could not have intended that employees who believe that they are the victims of discrimination should be blocked from filing civil actions against their employers simply because they, as laymen, did not realize that failure to name certain individuals in the EEOC charges would block further action against those individuals.") (emphasis added).  Perhaps inadvertently, Plaintiffs acknowledge this limitation in their own pleadings:  "The Plaintiffs as laypersons cannot be held accountable, as Title VII does not require procedural exactness from laypersons."  Opp'n to Wendy's Mot. 8 (citing Scannell v. Bel Air Police Dept., 968 F. Supp. 1059 (D. Md. 1997)) (emphasis added).  Plaintiffs clearly were not proceeding as laypersons when they filed their EEOC materials: they were represented by the same counsel that now represents them before this Court.  See Pl.'s Ex. A.

Accordingly, the Title VII claims against Wendy's International will be dismissed.

B. Title VII Claims Against Davco

Plaintiffs attempt to assert three different Title VII claims against Davco: a claim for "Sexual Harassment - Quid Pro Quo" (Count X); a claim for "Sexual Harassment - Hostile Work Environment" (Count XII); and a more generic claim for "Sexual Discrimination" (Count XIV).  Davco has moved to dismiss the "quid pro quo" claim on the ground that Velazaquez lacked any supervisory authority over Sarah.  Davco has moved to dismiss

9

Count XIV on the ground it is duplicative of the hostile work environment claim in Count XII.[2]

In one of the landmark Title VII decisions issued by the Supreme Court in 1998, Burlington Indust., Inc. v. Ellerth, 524 U.S. 742, 751 (1998), Justice Kennedy outlined the general distinction between Title VII "quid pro quo" and "hostile environment" claims, as those claims had been developed by the federal courts.  Quid pro quo claims typically involve a supervisor carrying out a threat to take some tangible employment action against a subordinate because that subordinate denied the supervisor a demand for certain sexual liberties.  Id.  Claims of the latter sort, the Court explained, arise when the employee is subjected to bothersome attentions or sexual remarks that are sufficiently severe or pervasive to create a hostile work environment.  Id.  Unlike hostile environment claims which can arise from the conduct of either supervisors or co-workers, quid pro quo claims typically involve the conduct of a supervisor, because it is only supervisors that can make decisions regarding tangible employment actions.  See Atkins v. Computer Sciences Corp., 264 F. Supp. 2d 404 (E.D. Va. 2003) (granting summary judgment to defendant on quid pro quo claim where plaintiff failed to establish that alleged harasser "had the authority to terminate plaintiff's working relationship with defendant"); Ecklund v. Fuisz Tech., Ltd., 905 F. Supp. 335, 339 (E.D. Va.

---

[2] Davco has not challenged the hostile work environment claim on its merits.

1995) (holding that quid pro quo claim fails where the alleged harasser does not have the power to grant or withhold job benefits to the plaintiff).

It is not readily apparent how Plaintiffs believe their allegations would fit within the framework of a "quid pro quo" claim. Within Count X itself, they allege that "[t]he aforementioned conduct toward minor Plaintiff as a result of her rejection of advances has caused minor Plaintiff to suffer severe humiliation, embarrassment, degradation, and emotional and physical distress." Compl. ¶ 167. The "aforementioned conduct" undoubtedly refers to the attempted kiss, but Plaintiffs also include in the Complaint allegations that Velazaquez engaged in a pattern of pursuing women employees, presumably including Sarah, for the purpose of romantic and/or sexual relationships. When pursuing, Velazaquez "initially provided extraordinary assistance and was solicitous to the selected woman's perceived needs." Id. 23. When the selected women rejected his advances, Plaintiffs allege Velazaquez "became distant, cold, rude and abusive, [and] withdrew the assistance formerly provided. . ." Id. ¶ 31. Plaintiffs also peppered the Complaint with allegations that Velazaquez had actual authority and/or apparent authority to supervise and manage the store and its employees. Id. ¶¶ 17-19, 26, 33, 35.

The Court finds that these allegations, accepted as true and viewed in the light most favorable to Plaintiffs, still fall short of stating a claim under a "quid pro quo" theory. While

11

Plaintiffs allege that Velazaquez had the authority to "supervise" other employees, they nowhere allege in the Complaint that he had the authority to grant or withhold any job benefits or to take any "tangible employment actions" against any other employee.  In their opposition to Davco's motion, Plaintiffs allege that Sarah "believed [Velazaquez] had authority to hire, fire, promote, reassign or make decisions affecting compensation," Opp'n 5, but that allegation is not included in the Complaint.  Furthermore, that allegation is inconsistent with other statements made by Sarah that are incorporated by reference into the Complaint.  In the questionnaire submitted to the EEOC, Sarah refers to Velazaquez as a "co-worker."  Pls.' Ex. A, Harassment Questionnaire at 1.b.[3]  In addition, none of the actions allegedly taken by Velazaquez when co-workers rejected his advances, i.e., "bec[oming] distant, cold, rude and abusive, [and] withdr[awing] the assistance formerly provided," rise to the level of "tangible employment actions."  While they might have some relevance to a hostile environment claim, they do not support a quid pro quo claim.[4]

---

[3] The questionnaire specifically asked for the "[n]ame and title of the person(s) doing the harassment and the working relationship of each person to you (e.g., immediate supervisor, co-worker)."  Plaintiffs' response was, "Jorge Arteage Valazaquez [sic], co-worker."  Furthermore, the Police Report, which was made an attachment to the questionnaire and which memorialized Sarah's statement to the police, repeatedly refers to Velazaquez as a "co-worker."  Pls.' Ex. B.

[4] Davco also moves to dismiss the quid pro quo claim on the ground that it is outside the scope of the EEOC charge.

In addition to dismissing the "quid pro quo" claim, the Court will dismiss Count XIV, Plaintiffs' claim for "Sexual Discrimination" on the ground that it is duplicative of Plaintiffs' hostile environment claim (Count XII). The gravamen of the claim that Plaintiffs assert in this count appears to be that Velazaquez's conduct "created a work environment which was inferior to the work environment of males." Compl. ¶ 188. That, of course, is the essence of a hostile environment claim. While Plaintiffs state in their opposition that they will move to amend this count if dismissed, they offer no explanation how an amended count will not simply restate the hostile environment claim.

C. State Tort Claims

Plaintiffs bring the following state tort claims against Defendants Davco and Wendy's: Negligent Infliction of Emotional Distress; Intentional Infliction of Emotional Distress; Negligent

---

Plaintiffs, however, are not required to articulate in their EEOC charges the precise legal theories which they will later assert in a Title VII lawsuit. See Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005) ("'[I]f a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit.'") (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 247-48 (4th Cir 2000)); Bridges v. Eastman Kodak Co., 822 F. Supp. 1020, 1026 (S.D.N.Y. 1993) (where EEOC charge alleged only a "hostile environment" claim, allowing plaintiff to proceed with quid pro quo claim in the district court because both the plaintiffs' hostile environment and quid pro quo claims "stem from the same set of facts alleged in the plaintiffs' EEOC charge[]").

Hiring or Retention; and, Negligence - Solatium and Medical Expenses.  Each claim fails for a variety of reasons.

First, Maryland does not recognize the tort of "negligent infliction of emotional distress" as an independent cause of action, <u>Bagwell v. Peninsula Regional Medical Center</u>, 665 A.2d 297, 320 (Md. App. 1995), and Plaintiffs make no argument why this Court should depart from that longstanding position.  Maryland courts have recognized the tort of "intentional infliction of emotional distress," but only in the rarest of circumstances: "'its balm [is] reserved for those wounds that are truly severe and incapable of healing themselves.'"  <u>Silvera v. Home Depot U.S.A., Inc.</u>, 189 F. Supp. 2d 304, 311-312 (D. Md. 2002) (quoting <u>Figueiredo-Torres v. Nickel</u>, 584 A.2d 69, 75 (Md. 1991)).  To give rise to this cause of action, the conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  <u>Harris v. Jones</u>, 380 A.2d 611, 615 (Md. 1977).  The conduct alleged in the Complaint, while certainly inappropriate, is hardly of that character.

As for Plaintiffs' "Negligent Hiring or Retention" claim, Plaintiffs allege that Defendants "had a duty to use reasonable care to select an employee who was competent and fit to perform the duties as supervisor."  Compl. ¶ 220.  This is in essence a claim for the negligent failure to provide a safe workplace.  This Court has consistently held that the Maryland Workers'

14

Compensation Act provides the exclusive remedy for negligent hiring and retention claims such as that advanced here.  See, e.g., Newman v. Giant Food, Inc. 187 F. Supp. 2d 524 (D. Md. 2002); Demby v. Preston Trucking Co., Inc., 961 F. Supp. 873 (D. Md. 1997); Plater v. UE&C Catalytic, Inc., 1992 WL 414814, (D. Md. 1992).

Finally, given that Plaintiffs have failed to state a viable claim for negligence, their counts seeking specific damages based upon their negligence claims, Count XIX and XX, must also fail. Furthermore, Plaintiffs do not dispute that Maryland law does not permit solatium claims in the parent-child context.  See Gaver v. Harrant, 557 A.2d 210, 218 (Md. 1989).

**IV. CONCLUSION**

For the above stated reasons, all claims against Defendant Wendy's International will be dismissed.  All claims against Defendant Davco, with the exception of Plaintiffs' Sexual Harassment - Hostile Work Environment claim, will also be dismissed.  A separate order will issue.

/s/
_____
William M. Nickerson
Senior United States District Judge

Dated: June 15, 2006

15